## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LOLA ZIADIE,

       Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,

       Defendant.

Civil No. 24-2393-BAH

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Lola Ziadie ("Ziadie") brought suit against Costco Wholesale Corporation ("Costco") alleging one count of negligence arising out of a fall that occurred outside of a Costco store in Glen Burnie, Maryland. ECF 4 (complaint). Pending before the Court is Costco's motion for summary judgment. ECF 28. Also pending is Ziadie's motion for leave to file an opposition out of time, with Ziadie's opposition to the motion for summary judgment appended thereto. ECF 29. Costco filed an opposition to Ziadie's motion to file out of time. ECF 31. All filings include memoranda of law, and the motion for summary judgment includes exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Ziadie's motion for leave to file out of time is **GRANTED**, and Costco's motion for summary judgment is **GRANTED**.

## I.    <u>BACKGROUND</u>

On August 13, 2021, Ziadie went to Costco in Glen Burnie, Maryland to go "to the tire shop because there was something wrong with one of [her] tires." ECF 28-2 (Ziadie's deposition),

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

at 5, 26:3–4, at 6, 31:1.  Ziadie had been to "multiple . . . Costco tire centers" before, though this was her second time going to the Glen Burnie store and her first time at that tire center.  *Id.* at 7, 32:8–9, 32:16–22.

"The weather was great" that day, and "[i]t was not raining."  *Id.* at 6, 31:9–10.  Ziadie "parked close to the tire center," "grabbed [a] cart," and "went up" an inclined "ramp."  *Id.* at 8, 34:7–10, at 9, 36:18–20.  She recounted that a "trash bin was at the edge" of the sidewalk, near a raised curb.  *Id.* at 8, 36:21–22, at 14, 40:7–1, at 41:1–6; ECF 28-3 (first photograph of the outside of the tire center), at 1; ECF 28-4, at 1 (second photograph of the outside of the tire center).  Ziadie then "tr[ied] to put something in the trash can to get rid of it" but people were approaching her, so she "stepped back to give them way while simultaneously reaching to th[e] trash bin."  ECF 28-2, at 12–13, 39:19–40:4.  She recalls that while she did this, she "did not look behind her."  *Id.* at 17, 44:19.  Ziadie then "stepped back" off the sidewalk, "flipped over" and sustained "[m]ultiple injuries" including to her head and hand.  *Id.* at 3, 19:10–11,19:20–22, at 4, 20:19–21, at 5, 26:1, 26:12–16, at 17, 44:13–15.

According to Ziadie, the height difference between the sidewalk and parking lot "is very clear," but she did not see it because her "focus [was] to get to the tire shop" and her "job was not to scrutinize the area."  *Id.* at 15, 42:15–19, at 18, 45:7–14.  Ziadie maintains that the height difference from the curb to the street "was a hazard" that was made "worse when that trash can was right there."  *Id.* at 16, 43:9–12.

Ziadie filed suit in the Circuit Court for Anne Arundel County on August 16, 2024, alleging damages in "an amount greater than $75,000."  ECF 4, at 3.  Costco then removed the action to federal court pursuant to 28 U.S.C. § 1332(a).  ECF 1, at 1 (notice of removal).  A scheduling order issued shortly thereafter, ECF 7, and the parties commenced discovery.  On the discovery deadline,

January 2, 2025, Costco filed a motion to compel discovery based on Ziadie's alleged failure to 1) respond to written discovery, which Costco served on September 9, 2024, and 2) provide her availability for a deposition. ECF 12, at 1. The Court directed the parties to attempt to resolve the discovery dispute in accordance with the informal discovery dispute procedure at ECF 8. *See* ECF 14. The motion to compel was denied after the parties reported they were able to resolve the dispute, and Ziadie was to provide her responses to discovery by January 17, 2025. *See* ECF 15 (joint status report); ECF 16 (order denying motion to compel in light of the joint status report).

Costco then filed a motion to extend the scheduling order deadlines, asserting that Ziadie's responses to discovery, provided on January 16, 2025, were "wholly deficient" and "contain[ed] numerous unfounded, boilerplate, and untimely objections." ECF 17, at 2. Also, because Ziadie had yet to sit for a deposition despite Costco requesting her availability "on at least three occasions," Costco requested an extension of deadlines to depose Ziadie and file a dispositive motion. *Id.* at 2–3 (emphasis omitted). Ziadie took no position on the motion, ECF 21, at 1, and so Costco's motion to extend the scheduling order deadlines was granted, *see* ECF 24. Ziadie was deposed on March 27, 2025. *See* ECF 28-2.

Costco then filed its motion for summary judgment on May 5, 2025. ECF 28. As evidence in support of the motion for summary judgment, Costco submits excerpts from Ziadie's deposition testimony, *see* ECF 28-2, photographs of the outside of the tire center that Ziadie took and brought to her deposition, *see* ECF 28-3; ECF 28-4, and Ziadie's responses to Costco's interrogatories and requests for production of documents, *see* ECF 28-5. The photographs are included below:



ECF 28-3, at 1.[2]

---

[2] The photographs in the record were not taken by Ziadie on the day of her fall.  ECF 28-2, at 7, 32:8–12.  The day the pictures were taken, the trash can was no longer in the location near the edge of the sidewalk as it was when she fell.  *Id.*  During Ziadie's deposition, she marked with an "x" on the photograph above where the trash can was located at the time of her fall.  *Id.* at 12, 39:3–14; *see also* ECF 28-3.  That the trash can was located in the spot marked by Ziadie in that photograph is not disputed by Costco.  *See* ECF 28-1, at 2.



ECF 28-4, at 1.

Ziadie's deadline to file a response to the motion for summary judgment pursuant to Local Rule 105.2 would have been May 19, 2025. *See* Loc. R. 105.2 (D. Md. 2025) ("Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion[.]"). On May 28, 2025, nine days late, Ziadie filed a motion for leave to file a response out of time, *see* ECF 29-1, with the proposed opposition appended thereto, ECF 29-2. Ziadie's opposition does not point to any additional evidence beyond what was filed by Costco. *See* ECF 29. Costco opposes Ziadie's request to file a late response. *See* ECF 31.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

"Summary judgment" is "warranted if the non-moving party fails to provide evidence that establishes an essential element of the case." *Jackson v. Maryland Dep't of Gen. Servs.*, Civ. No. SAG-20-1875, 2022 WL 3544254, at *2 (D. Md. Aug. 18, 2022) (citing *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 352 (D. Md. 2011)).  "To satisfy this burden, the non-movant 'must produce competent evidence on each element of his or her claim.'" *Casey*, 823 F. Supp. 2d at 348–49 (citing *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).  If the non-moving party fails to do so, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In such a situation, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III. **ANALYSIS**

The Court first decides Ziadie's motion to file an opposition out of time as its disposition will affect the Court's analysis of Costco's motion for summary judgment.

### A.    Ziadie's Motion

Ziadie requests permission to file an opposition to Costco's motion for summary judgment past the fourteen-day deadline set by Local Rule 105.2. *See* Loc. R. 105.2 (D. Md. 2025). Federal Rule of Civil Procedure 6(b)(1) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on a motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "Whether to consider an untimely filing for failure to abide by the court's briefing schedule is a matter within the court's discretion." *Barringer v. Progressive Select Ins. Co.*, Civ. No. DKC-25-1414, 2026 WL 41092, at *4 (D. Md. Jan. 7, 2026); *see also Ball-Rice v. Bd. of Educ. of Prince George's Cnty.*, Civ. No. PJM-11-1398, 2013 WL 2299725, at *5 (D. Md. May 24, 2013) ("Since Local Rule 105.2 does not provide the consequence for a failure to meet the prescribed deadline, it is within the discretion of the court whether to consider a late submission untimely and strike it from the record."). "Excusable neglect" is an "elastic concept," which may include "inadvertence, mistake, or carelessness, as well as . . . intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388, 392 (1993). To determine whether a late filing is due to excusable neglect, a court considers four factors, including 1) "the danger of prejudice to the [non-moving party]"; 2) "the length of the delay and its potential impact on judicial proceedings"; 3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and 4) "whether the movant acted in good faith." *Id.* at 395.

Here, Ziadie's counsel says excusable neglect exists for the late filing based on "the pressures of [his] busy solo practice." ECF 29-1, at 1. Costco counters that this reason is "simply not compelling" based on Ziadie's "long track record of disregarding deadlines and failing to meaningfully engage in discovery." ECF 31, at 3. Costo argues that "this is far from the first instance of Plaintiff's failure to timely abide by deadlines," and recounts the parties' previous

discovery disputes including Ziadie's failure to timely send responses and provide her availability for a deposition. *Id.* at 2.

The Court acknowledges Costco's frustration regarding the prior discovery disputes and counsel's failure to meet deadlines. However, these disputes were previously remedied by the Court granting Costco an extension of the scheduling order deadlines. *See* ECF 24. With respect to Plaintiff's opposition, the *Pioneer* factors overall do not weigh against allowing Ziadie to file a late response to the motion for summary judgment. The extension requested is only nine days, which is "shorter than the delays in other cases where excusable neglect was found." *See Forchu v. USRP I LLC*, Civ. No. DKC-24-2650, 2025 WL 1707270, at *3 (D. Md. June 18, 2025) (finding a fourteen-day delay while "not *de minimus*, [ ] is shorter than the delays in other cases where excusable neglect was found"). This minor delay does not have any impact on judicial proceedings as there is no trial date or other hearing set at this time. *See Terry v. Swift Transportation*, No. 1:16CV256, 2017 WL 4236923, *2 (M.D.N.C. Sept. 22, 2017) (a minimal delay in answering did not affect judicial proceedings where there was no trial date or other hearing set). Costco has not argued that it has or will suffer prejudice as a result of Ziadie's late filing, nor does it argue that Ziadie acted in bad faith by filing her opposition late. *See, e.g.*, ECF 31, at 1 ("Plaintiff's inattention to this deadline demonstrates a general lack of diligence or, at the very least, carelessness on the part of the Plaintiff."). The third factor, the reason for delay, weighs against Ziadie as her counsel's busy caseload does not establish excusable neglect. *See Jones v. Giant of Maryland, LLC*, Civ. No. DKC-08-0304, 2010 WL 3677017, *7 (D. Md. Sept. 17, 2010) ("To the extent that the untimely filing is the result of a heavy caseload or a difficult case, Plaintiff's neglect is not excusable."). Nevertheless, given the relatively modest delay caused by the late filing and lack of prejudice to Costco, and noting that the delay is attributable to counsel's actions alone,

Plaintiff's extension of time will be granted. The Court now turns to Costco's motion for summary judgment.

### B. Costco's Motion for Summary Judgment

#### 1. There is no dispute of material fact.

Costco argues that summary judgment should be granted in its favor because 1) Ziadie fails to show "that the height difference between the asphalt parking lot surface and the concrete sidewalk constituted a dangerous condition"; 2) "the difference in height was open and obvious"; 3) Ziadie "does not have admissible evidence to show her damages were proximately caused by the fall"; and 4) Ziadie was contributorily negligent. ECF 28-1, at 10–17. In response, Ziadie affirms that "[m]any of the facts alleged by the Defendant are undisputed." ECF 29-2, at 1. She argues that regardless, "Defendant has failed to establish an absence of disputed material facts, both as to liability, contributory negligence and damages." *Id.* at 8. The Court again notes that Ziadie did not offer any evidence in opposing the motion for summary judgment. *See* ECF 29. As such, the record evidence consists only of the exhibits attached to Costco's motion for summary judgment. *See* ECF 28-2 – 28-5. Because Ziadie offers no evidence to show a factual dispute exists, the only issue presented is whether Costco is entitled to summary judgment as a matter of law. *See, e.g.*, *Curry v. Weiford*, 389 F. Supp. 2d 704, 713 (N.D.W. Va. 2005) ("Because the plaintiff has not developed any evidence whatsoever, there is no genuine issue [of] material fact."); *see also Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 ("Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists."). The Court concludes that it is.

2. <u>Negligence</u>

Under Maryland law,[3] "to assert a claim in negligence, the plaintiff must prove: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 560 (D. Md. 2014) (internal quotation marks omitted) (quoting *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 10 (Md. 2013)). "[I]n Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (i.e., a business invitee), a licensee by invitation (i.e., a social guest), a bare licensee, or a trespasser." *Id.* at 561. "The highest duty is owed to a business invitee, defined as 'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Aska-Abramson v. Wal-Mart Stores E., LP*, 743 F. Supp. 3d 695, 699 (D. Md. 2024) (quoting *Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 388 (Md. App. 1997)). Here, neither party disputes that Ziadie was a business invitee when she fell outside of Costco. *See* ECF 28-1, at 9; ECF 29-2, at 3.

A store owner "only has a duty to exercise reasonable care to 'protect the invitee from injury caused by an unreasonable risk' that the invitee would be unlikely to perceive in the exercise

---

[3] This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). ECF 1, at 1. A federal court exercising diversity jurisdiction must apply the law of the forum state in which the court is located, including the forum state's choice of law rules. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th. Cir. 2007). "'Maryland adheres to the lex loci delicti rule' to determine the applicable law in tort actions." *Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 414 (D. Md. 2011) (quoting *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000)). An injury "is deemed to occur where the plaintiff first suffers harm." *Id.* (citing *Burnside v. Wong*, 986 A.2d 427, 438 (Md. 2010)). Because Ziadie's fall took place in Maryland, the Court will apply Maryland law.

of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care." *Rybas*, 21 F. Supp. 3d at 561 (quoting *Casper v. Chas. F. Smith & Son, Inc.*, 560 A.2d 1130, 1135 (Md. 1989)).  "Unreasonable risks are those that will not be discovered by invitees exercising ordinary care for their own safety."  *Schaefer v. United States*, Civ. No. PX-15-02690, 2017 WL 2506174, at *2 (D. Md. June 9, 2017) (citing *Leatherwood Motor Coach Tours Corp. v. Nathan*, 579 A.2d 797, 802 (Md. App. 1990)).

### i. The sidewalk height was not an unreasonable risk.

Costco argues that it cannot be held liable for negligence because the height difference between the parking lot and sidewalk did not present an unreasonable risk and was an open and obvious condition.  ECF 28-1, at 10.  Indeed, "[i]t is well settled that uneven ground surface generally does not amount to an 'unreasonable risk,' because pedestrians customarily and ordinarily expect to encounter such variations in terrain."  *Schaefer*, 2017 WL 2506174, at *3 (quoting *Leatherwood*, 579 A.2d at 803); *see also Gellerman v. Shawan Rd. Hotel Ltd. P'ship*, 5 F. Supp. 2d 351, 353 (D. Md. 1998).  Ziadie argues that "[t]he difference in height between the sidewalk and the traffic pavement was not a mere unevenness in the pavement" nor "the result of normal wear and tear in the pavement that any pedestrian may have anticipated."  ECF 29-2, at 4. But the photographs in the record show what appears to be an ordinary curb height difference between the sidewalk and asphalt outside of the tire center, *see* ECF 28-3; ECF 28-4, and Ziadie does not point to any other evidence in the record to support her argument that the height difference was anything more than an uneven ground surface that a pedestrian should have reasonably anticipated.  *See, e.g.*, *Tester v. Walmart, Inc.*, 856 F. App'x 586, 588–89 (6th Cir. 2021) (explaining that "ordinary curbs are not dangerous per se," and that "[w]hen a plaintiff trips on a common object like a curb, he must give evidence that there was something unusual or defective about it" (Tennessee law)); *Dale v. Virginia CVS Pharmacy, LLC*, No. 7:19-CV-578, 2021 WL

129820, at *2 (W.D. Va. Jan. 13, 2021) ("While certain conditions may be routinely accepted as unsafe in establishing a prima facie case of negligence, such as wet, slippery substances on the floor, or unexpected hazards, a sidewalk curb, in and of itself, does not fall into this category." (Virginia law)); *Beasley v. Wal-Mart Stores, Inc.*, No. 1:11CV070-SA-DAS, 2012 WL 1185946, at *1 (N.D. Miss. Apr. 9, 2012) ("Mississippi courts have long held that normally encountered dangers such as curbs, sidewalks, and steps are not hazardous conditions.").  Because the difference between the sidewalk and the parking lot was nothing more than a normal variation in terrain, a reasonable jury could not find that the curb height constituted an unreasonable risk to support a negligence claim.  *Cf. Bonura v. Univ. of Md. Coll. Park*, No. 0043, Sept. Term 2020, 2021 WL 1157939, at *4 (Md. App. Mar. 26, 2021) (finding that a rollover curb was "a common feature in commercial parking lots" that "did not pose an unreasonable risk").

### ii.  The sidewalk height was open and obvious.

Even if the difference between the ground and the curb was more than an uneven ground surface, it was nonetheless open and obvious.[4]  "[T]he owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger."  *Gellerman*, 5 F. Supp. 2d at 353 (quoting *Tennant*, 693 A.2d at 374).  "Open and obvious conditions are apparent and recognizable to 'a reasonable person in the position of a visitor, exercising ordinary perception, intelligence, and judgment.'"  *Schaefer*, 2017 WL 2506174, at *3 (quoting *Coleman v. United States*, 369 F. App'x 459, 462 (4th Cir. 2010)).  "When encountering such conditions, the invitee is responsible for exercising basic care for her own safety, including 'a duty to look and see what is around

---

[4] Courts typically analyze whether a dangerous condition was open and obvious in conjunction with analysis of whether an unreasonable risk existed.  *See e.g.*, *Tennant*, 693 A.2d at 374–75. However, because Costco's motion for summary judgment separates its arguments regarding unreasonable risk and an open and obvious condition, the Court analyzes these arguments separately too.

[her].'"  *Id.* (quoting *Coleman*, 369 F. App'x at 462).  "Whether a defect is open and obvious usually must be reserved for the trier of fact."  *Id.* (citing *C & M Builders, LLC v. Strub*, 22 A.3d 867, 885 (Md. 2011)).  "However, 'where it is clear that any [reasonable] person [in plaintiff's position] must have understood the danger, the issue may be decided by the court.'"  *Id.* (alterations in *Schaefer*) (quoting *C & M Builders*, 22 A.3d at 885); *see also Gellerman*, 5 F. Supp. 2d at 354 (granting summary judgment to defendant where the "condition of the curb/sidewalk joint on defendants' premises was open and obvious").

Costco asserts that the photographs provided "show the height difference between the asphalt parking lot surface and the concrete sidewalk was open and obvious," and that Ziadie had a duty to exercise ordinary care by looking around her to discover it.  ECF 28-1, at 13–14.  Ziadie concedes that "the different levels of pavement on the Defendant's premises may be an open and obvious defect," but argues that "Defendant's placement of the trashcan on the edge of the raised pavement created a defect that eventually caused the injury, and amounted to a hidden defect in the premises."  ECF 29-2, at 5.

But Ziadie's own deposition testimony contradicts this argument.  Ziadie testified multiple times that the parking lot and sidewalk were "clearly uneven."  ECF 28-2, at 13, 40:10, at 15, 42:20–21.  For example, when asked in her deposition about the height difference between the sidewalk and parking lot, Ziadie said it was "very clear. It is. If you go out there, you will notice. Even from the photo, it's clearly much higher than the street level."  *Id.* at 15, 42:15–21.  Ziadie also testified that she pushed her cart up an inclined ramp to get to the sidewalk, *id.* at 8, 34:9–10, at 9, 36:18–20, such that it would be obvious to a reasonable person exercising ordinary care that the sidewalk was at a higher level than the parking lot.  And, in fact, Ziadie never testified that she did not see the difference in curb height because the trash can was blocking her view.  *See, e.g.*,

*id.* at 17, 44:7–19 (testifying that Ziadie did not see the height difference because her "goal was to go into the shop" and "[a]ll the people were coming towards" her); ECF 29-2, at 3 ("The Plaintiff did not perceive any danger having been distracted by the trash can and her attempts to place waste inside.").

Moreover, the photographs provided by Ziadie at her deposition depict that the location of the trash receptacle would not obstruct the view of the expansive curb such that Ziadie would have been unable to see the height difference if she looked to see what was around her. *See* ECF 28-3; ECF 28-4; *cf. Hagan v. Washington Suburban Sanitary Comm'n*, 314 A.2d 699, 703 (Md. App. 1974) ("In proceeding onto a public area an ordinarily prudent person should anticipate impediments to his progress as a fact of modern life, e. g. public lighting and utility fixtures, trash containers, mail boxes, fire alarms, call boxes, and fire hydrants."). Ziadie fails to point to any evidence in the record that supports her theory that "the different levels of pavement" were "hidden by the Defendant's placement of the trash can." ECF 29-2, at 4. As such, Ziadie's argument that the placement of the trash can created a hidden defect is unsupported by the record evidence and does not defeat Costco's motion for summary judgment. *Cf. Beach v. Costco Wholesale Corp.*, No. 5:18-CV-92, 2020 WL 1879016, at *3 (W.D. Va. Apr. 15, 2020) (applying Virginia law and finding that based on photographic evidence, the plaintiff's claim that the pothole was camouflaged [wa]s a factually unsupported claim and [wa]s insufficient to survive the motion for summary judgment"), *aff'd,* 829 F. App'x 630 (4th Cir. 2020).

> *iii. There were no unexpected distractions beyond of the miscellany of normal activity.*

Neither can Ziadie claim that she encountered an unexpected distraction that might excuse her from observing the open and obvious sidewalk condition. In general, "a reasonable pedestrian . . . is expected to be aware of her surroundings and exercise ordinary care to keep herself safe."

*Schaefer*, 2017 WL 2506174, at \*3.  However, "invitees may, in certain instances, be excused from observing open and obvious defects due to unexpected distractions beyond the 'miscellany of activity normally found.'"  *Id.* (quoting *Gellerman*, 5 F. Supp. 2d at 354).  "Pedestrians walking alongside others is among the miscellany of normal activity considered customary rather than unexpected." *Id.* (citation modified).

Costco argues that "Ziadie's failure to observe the open and obvious height difference" was inexcusable because "[t]he presence of the trash can on the sidewalk and the presence of other pedestrians on the sidewalk is neither unexpected nor beyond the miscellany of activity normally found on public walkways."  ECF 28-1, at 14.  Ziadie does not respond to this specific argument or advance any affirmative argument of her own with respect to her responsibility to exercise ordinary care to keep herself safe.  In general, such a failure to respond would be treated as a concession.  *See, e.g.*, *United Supreme Council v. United Supreme Council of Ancient Accepted Scot. Rite for 33 Degree of Freemasonry*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018) ("Failure to respond to an argument made in a dispositive pleading results in a concession of that claim."); *Coomes v. Moran*, Civ. No. ELH-22-02639, 2025 WL 2106739, at \*39 (D. Md. July 28, 2025) ("I need not spill ink to consider contentions that are waived.").  Nevertheless, the Court finds that the evidence in the record shows that Ziadie failed to exercise ordinary care and is not excused from observing the open and obvious condition of the sidewalk.

First, a trash can is a condition that is normally found on sidewalks outside of retail stores and the location of the trash can at Costco did not render the sidewalk height "anything other than open and obvious."  *Cf. Bonura*, 2021 WL 1157939, at \*6 (noting that "conditions [that] are expected and normally found within parking lots" such as an unpainted curb or blending of the sidewalk did not "make[ a] rollover curb" that the plaintiff tripped over "anything other than open

and obvious"). That Ziadie was distracted by the trash can does not excuse her failure to "exercis[e] basic care for her own safety." *Schaefer*, 2017 WL 2506174, at *3.

Second, Ziadie admitted in her deposition that she failed to appreciate the height difference of the sidewalk because she did not take stock of her surroundings and testified that her "job was not to scrutinize the area." ECF 28-2, at 18, 45:7–14. To the contrary, it is the responsibility of a reasonable pedestrian "to be aware of her surroundings and exercise ordinary care to keep herself safe" unless presented with "unexpected distractions beyond the 'miscellany of activity normally found.'" *Schaefer*, 2017 WL 2506174, at *3 (quoting *Gellerman*, 5 F. Supp. 2d at 354). The evidence in record does not show that Ziadie faced any unexpected distraction beyond such normal activity. Ziadie's testimony that she did not notice the sidewalk height because "people were coming towards" her is unavailing. ECF 28-2, at 17, 44:7–14. "Other pedestrians on a sidewalk are clearly among the normal activity that can be expected and are not a sufficient distraction to excuse a pedestrian's failure to see what is in front of her." *Sampson v. United States*, Civ. No. DKC-15-0243, 2017 WL 3022971, at *6 (D. Md. July 17, 2017).

The Court also finds a case cited by Costco, *Gellerman v. Shawan Road Hotel*, 5 F. Supp. 2d 351 (D. Md. 1998), instructive on this point. ECF 28-1, at 12–13. In *Gellerman*, a plaintiff tripped and "fell as she was about to step down from the raised sidewalk to the surface of the parking lot." *Gellerman*, 5 F. Supp. 2d at 353. The plaintiff there argued that she should be excused for not noticing a sidewalk defect "because she was looking out for on-coming cars." *Id.* The Court rejected that argument and granted summary judgment to defendants, noting that "the need to be alert to the possibility of moving vehicles on the parking lot" was not "a distraction that was unexpected and substantially beyond the miscellany of activity normally found on large parking lots, so as to excuse [the plaintiff]'s failure to see what was there to be seen had she been

properly observant in the exercise of reasonable care for her own safety." *Id.* at 354 (internal quotation marks omitted). So too here. "[O]ther pedestrians are an entirely common condition" outside of a retail store such as Costco. *Sampson*, 2017 WL 3022971, at *6. Ziadie fails to "present any evidence that there was something unexpected or beyond the miscellany of normal activity so as to excuse her failure to observe" the height difference between the sidewalk and the parking lot had she exercised reasonable care for her own safety. *Duncan-Bogley v. United States*, 356 F. Supp. 3d 529, 540–41 (D. Md. 2018).

As Ziadie failed to exercise due care for her own safety and does not present any evidence excusing her failure to do so, she fails to establish a negligence claim. *See Sampson*, 2017 WL 3022971, at *6 (granting summary judgment to defendants where the plaintiff failed to exercise due care and "account for both visible defects and other pedestrians"); *see also Schaefer*, 2017 WL 2506174, at *3 (granting summary judgment and noting "[t]hat Plaintiff's view of the crack [in the sidewalk] may have been temporarily obstructed by her husband's walking in front of her does not compel a different outcome"). Summary judgment is appropriate for this reason.[5]

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Ziadie's motion to file an opposition out of time, ECF 29, is **GRANTED**, and Costco's motion for summary judgment, ECF 28, is **GRANTED**. The clerk is directed to close this case.

A separate implementing order will issue.

Dated: <u>February 26, 2026</u>                      <u>                    /s/                    </u>
                                                    Brendan A. Hurson
                                                    United States District Judge

---

[5] Accordingly, the Court need not reach Costco's remaining arguments related to damages and contributory negligence. *See* ECF 28, at 15–17.